UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANDREA K.,[1] | ) | |
| | ) | No. 19 CV 1682 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| ANDREW M. SAUL, Commissioner of | ) | |
| the Social Security Administration, | ) | |
| | ) | August 17, 2020 |
| Defendant. | ) | |

## MEMORANDUM OPINION and ORDER

Andrea K. ("Andrea") seeks disability insurance benefits ("DIB") and supplemental security income ("SSI"), claiming that she is disabled by depression, panic attacks, anxiety, and a left knee disorder. Before the court are the parties' cross motions for summary judgment. For the following reasons, Andrea's motion is granted, the government's is denied, and the matter is remanded:

### Procedural History

Andrea filed her applications for DIB in June 2015 and SSI in July 2017, alleging in both a disability onset date of December 30, 2014. (Administrative Record ("A.R.") 10.) After her applications were denied initially and upon reconsideration, (id. at 103, 118), Andrea was granted a hearing before an administrative law judge ("ALJ"), (id. at 132-48). Andrea appeared for the hearing on October 18, 2017, along with her attorney and a vocational expert ("VE"). (Id. at

---

[1] Pursuant to Internal Operating Procedure 22, the court uses only the first name and last initial of Plaintiff in this opinion to protect her privacy to the extent possible.

26-91.)  Thereafter, the ALJ issued a decision in February 2018 concluding that Andrea is not disabled.  (Id. at 10-19.)  After the Appeals Council denied Andrea's request for review, (id. at 1-6), the ALJ's decision became the final decision of the Commissioner.  *See Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019).  Andrea then filed this lawsuit, and the parties consented to this court's jurisdiction.  *See* 20 U.S.C. § 636(c); (R. 6).

## The ALJ's Decision

The ALJ followed the required five-step process in evaluating Andrea's claims.  *See* 20 C.F.R. § 404.1520(a).  At step one the ALJ found that Andrea had not engaged in substantial gainful activity since her alleged onset date.  (A.R. 12.)  At step two the ALJ concluded that Andrea suffers from severe mental impairments, including depressive disorder and an anxiety disorder, and that Andrea's alleged "left knee disorder" is not a medically determinable impairment.  (Id. at 12-13.)  At step three the ALJ determined that Andrea's impairments do not meet or medically equal any listed impairment.  (Id. at 13.)  Before turning to step four, the ALJ assessed Andrea as having the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with certain non-exertional limitations.  (Id. at 14.)  Specifically, the ALJ assessed Andrea as having the capacity to make simple work-related decisions with occasional changes in work processes and environment and no more than incidental and superficial contact with co-workers, supervisors, and the public.  (Id.)  Given that RFC the ALJ

determined at step four that Andrea could not return to her past relevant work but that there are other jobs available that Andrea can perform. (Id. at 18-19.)

## Analysis

Andrea argues that the ALJ erred when evaluating the opinion evidence, assessing the RFC, and conducting the symptom assessment. In reviewing the ALJ's decision, the court does not reweigh the evidence or substitute its own judgment for the ALJ's. *See Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). The court asks only whether the ALJ applied the correct legal standards and whether the decision has the support of substantial evidence. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Substantial evidence means only "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Prater v. Saul*, 947 F.3d 479, 481 (7th Cir. 2020) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). Even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (quotation and citation omitted).

## A.     Symptom Assessment

The court begins its analysis with Andrea's challenge to the ALJ's evaluation of her subjective complaints because doubts about her credibility were critical to the disability determination. *See Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015) (noting that when neither treating nor consulting physicians' opinions support a disability claim the outcome rests on ALJ's symptom assessment). An ALJ's

3

symptom assessment is entitled to "special deference" and may be overturned only if it is "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017). The regulations require the ALJ to consider factors such as the claimant's medical history, diagnosis, treatment, daily activities, and any other evidence when assessing the severity of the claimant's symptoms. *See* SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017). The court will not disturb an ALJ's evaluation of a claimant's symptom descriptions if it is logically based on specific findings and evidence in the record. *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014).

Andrea first argues that the ALJ applied a harsher standard than the regulations permit in evaluating her symptom allegations. (R. 15, Pl.'s Mem. at 16.) The ALJ found that Andrea's statements regarding the severity of her symptoms were "not fully consistent with the evidence." (A.R. 15.) According to Andrea, the standard must be whether her statements are reasonably consistent under a preponderance of the evidence standard. (R. 15, Pl.'s Mem. at 16 (citing 20 C.F.R. §§ 404.901, 404.953(a)).) The government is correct that courts in this circuit— including this court—have declared that the inclusion of boilerplate language, like the "not fully consistent" phrasing that the ALJ used here, can amount to harmless error if the ALJ has otherwise explained her conclusion that the claimant's statements are not reliable. (R. 21, Govt.'s Mem. at 13); *see, e.g., Stephen M. v. Berryhill*, No. 17 CV 7608, 2019 WL 2225986 at *7 (N.D. Ill. May 23, 2019); *Phillips v. Berryhill*, 17 CV 4509, 2018 WL 4404665, at *6 (N.D. Ill. Sept. 17, 2018). Moreover, the Seventh Circuit has affirmed cases in which the "not fully consistent"

boilerplate language appeared in the ALJ's decision without any indication that the language is problematic. *See Cooley v. Berryhill*, 738 Fed. Appx. 877, 880 (7th Cir. 2018); *Reed v. Colvin*, 656 Fed. Appx. 781, 787 (7th Cir. 2016).

Here the court finds that, despite the problematic language, the ALJ considered the applicable factors when assessing the severity of Andrea's symptoms and made specific findings to support her decision. The ALJ considered the objective medical evidence and the opinion evidence, as well as Andrea's symptom complaints, statements to doctors, medications, and treatment. (A.R. 15-16); SSR 16-3p, 2017 WL 5180304 at *7-8. Based on her review of the evidence and testimony, the ALJ determined that Andrea was able to perform a full range of work with non-exertional limitations. (A.R. 14.) Thus, Andrea's claim that the ALJ disregarded her statements about the severity of her symptoms and the effect they have on her ability to work solely because they are not substantiated by objective medical evidence is incorrect. (See R. 15, Pl.'s Mem. at 17 (citing SSR 16-3p, 2017 WL 5180304, at *5 ("We will not evaluate an individual's symptoms based solely on objective medical evidence.")).)

Regarding the opinion evidence, the ALJ considered the opinion of consulting psychologist Dr. Jennifer Hambaugh, who examined Andrea in August 2015. (A.R. 334-37.) Dr. Hambaugh noted that Andrea appeared slightly depressed but had a euthymic mood, was cooperative and pleasant, answered questions slowly, could not recall recent news but could remember two out of three objects after five minutes, and displayed generally normal orientation, fund of information, abstract thought,

judgment, and insight. (Id.) The ALJ determined that the consulting psychologist's examination documented Andrea as having appropriate social interaction and normal mental functioning. (Id. at 15-16.) The ALJ also considered objective medical evidence from treating sources, including Andrea's primary care physicians, Drs. Nadira Ahmed and Kara Davis, noting Andrea's normal psychiatric exams.[2] (Id. at 16 (citing id. at 359-65, 425-37 (Dr. Ahmed), 492-524 (Dr. Davis)).) This evidence, the ALJ found, undermines Andrea's allegations that her symptoms are so disabling that she cannot perform basic activities. (Id.)

Andrea challenges the ALJ's reliance on records from her primary care physicians to undermine her allegations because, she says, these records are not relevant to her mental health treatment. (R. 15, Pl.'s Mem. at 17-18.) Andrea's argument has facial appeal because generally there is no reason to expect that a primary care physician would document concerns about mental health symptoms. *See Wilder v. Chater*, 64 F.3d 335, 377 (7th Cir. 1995) (noting that a physician asking about "an eye problem, or back pain, or an infection of the urinary tract" is not looking to diagnose depression). However, Andrea's primary care physicians did treat her mental health symptoms. Dr. Ahmed treated Andrea for anxiety and depression from May 2014 through March 2016, prescribing and adjusting her medications to treat mental impairments that the ALJ deemed "severe." (See, e.g., A.R. 435 (initial visit in May 2014, prescribing alprazolam), 429 (follow up in April

---

[2] In the symptom assessment, the ALJ cited to treatment notes from Dr. Ahmed at "14F," rather than Dr. Hambaugh's opinion at "4F," and vice versa. Because the ALJ's assessment is supported by substantial evidence, the ALJ's citation error is harmless and does not provide a sufficient basis for remand.

2015, increasing alprazolam and noting "[m]ay consider increasing [sertraline] next visit"), 428 (annual check-up in August 2015, refilling prescriptions), 365 (last visit in March 2016, discontinuing clonazepam and alprazolam).) Dr. Ahmed was the only doctor treating Andrea's symptoms until Andrea started seeing a psychiatrist in November 2015. After Andrea's last visit with the psychiatrist, her current primary care physician, Dr. Davis, took over her mental health treatment. (Id. at 506-09 (first visit with Dr. Davis in August 2016).) Accordingly, the ALJ appropriately considered Andrea's primary care records.

Andrea also contends the ALJ ignored evidence showing her "psychological abnormalities," including records from psychiatrist Dr. Carol Childers, who treated Andrea from November 2015 through June 2016. (R. 15, Pl.'s Mem. at 18 n.46.) Contrary to Andrea's assertion, the ALJ discussed treatment notes from Dr. Childers showing that Andrea appeared "very anxious" and "clearly in distress" at visits in late 2015 and early 2016 and explained why she found this evidence unreliable. (A.R. 16 (citing id. at 462, 470, 479, 486).) The ALJ explained that more recent treatment notes from Dr. Childers show that Andrea reported overall improvement with medications. (Id. at 16.) The ALJ also discussed records from a social worker Andrea visited in June and July 2017. (Id. at 14 (citing id. at 549-58).) The social worker found on examination that Andrea's orientation, recent memory, attention, concentration, and fund of knowledge were normal despite appearing anxious and depressed, having slow speech, and on one occasion exhibiting impaired judgment. (Id. at 522, 557.) These findings are consistent with

the consultative examination performed by Dr. Hambaugh in August 2015, (id. at 336-37), which the ALJ discussed in her symptom assessment.  Because the ALJ's decision shows that she considered the evidence Andrea claims she ignored, this argument is unavailing.

Andrea claims that the ALJ incorrectly stated that more recent treatment notes from Dr. Childers showed that Andrea's "medications control her panic symptoms well" and that she is "without depression or psychotic symptoms."  (R. 15, Pl.'s Mem. at 18-19.)  Andrea is correct that Dr. Childers noted in her February, April, and June 2016 treatment notes that Andrea reported having a panic attack at the dentist and that "certain situations" trigger symptoms, but they also show that Andrea consistently reported that her medications controlled her symptoms. (A.R. 455, 462, 470.)  Indeed, at her last visit with Dr. Childers on June 13, 2016, Andrea reported that her anxiety was "controllable" and that she had no depression, suicidal ideations, or psychotic symptoms.  (Id. at 455.)  Thus, the ALJ did not mischaracterize the record.

Andrea also complains that the ALJ cited the following statements without explaining why they undermine her symptom allegations: (1) she reported at her initial visit with Dr. Childers that she had been denied benefits and "therefore needed to see a psychiatrist for her disability application"; and (2) she reported at the August 2015 consultative examination that she stopped working in 2014 because her assignment ended and her contract was not being renewed.  (R. 15, Pl.'s Mem. at 20.)  The court agrees with the government that the ALJ's rationale is self-

evident.  (R. 21, Govt.'s Mem. at 15); *Prater*, 947 F.3d at 481.  It is easy to discern why the ALJ thought it significant that, at an examination solely for the purpose of evaluating her disability claim, Andrea reported that she left her job for reasons unrelated to her anxiety and depression, (A.R. 335), and that at her first visit with a psychiatrist, she announced that she had been denied benefits and needed support for her disability application, (id. at 486).

Finally, Andrea challenges the ALJ's reliance on her lack of hospitalization. (R. 15, Pl.'s Mem. at 19-20.)  The government responds that it was not unreasonable for the ALJ to consider lack of hospitalization, but it offers no further explanation. (R. 21, Govt.'s Mem. at 5-6.)  Courts in this circuit have questioned the underlying premise of the no-hospitalization argument, "which is that a person experiencing severe panic attacks necessarily would go to the emergency room or would be hospitalized as part of a treatment plan."  *See Thompson v. Berryhill*, No. 16 CV 50358, 2018 WL 6018608, at *3 (N.D. Ill. Nov. 16, 2018) (listing cases).  Also, the Seventh Circuit has recognized that a lack of hospitalization does not necessarily mean that a claimant's symptoms are not distressing or debilitating.  *See Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("Concluding that the claimant is not a raving maniac who needs to be locked up is a far cry from concluding that she suffers no limits on her ability to function.") (internal quotation and citation omitted).  For these reasons, and in the absence of any compelling argument by the government, the court agrees with Andrea that the ALJ's reliance on this fact without more explanation was not sufficient cause to detract from her credibility.

But because lack of hospitalization is just one of many reasons the ALJ cited for discrediting Andrea's symptom allegations, it does not render the ALJ's assessment patently wrong. *See Halsell v. Astrue*, 357 Fed. Appx. 717, 722-23 (7th Cir. 2009) ("Not all of the ALJ's reasons must be valid as long as *enough* of them are.") (emphasis in original). As explained above, the ALJ also considered the objective medical evidence and Andrea's medications, treatment, and her statements to treating and non-treating doctors. *See* SSR 16-3p, 2017 WL 5180304 at *7-8. Accordingly, the ALJ adequately supported her symptom assessment with specific findings and evidence in the record.

## B.  Opinion Evidence

Andrea asserts that the ALJ improperly evaluated the opinion evidence. (R. 15, Pl.'s Mem. at 5-9.) She primarily takes issue with the ALJ's handling of Dr. Childers's November 2015 Mental Impairment Questionnaire, in which the psychiatrist opined that Andrea is "debilitated and housebound due to panic and extreme agoraphobia," "unable to leave her house alone," and "fully disabled by the severity of her anxiety disorder and agoraphobia." (A.R. 443-45.) The ALJ assigned "little weight" to Dr. Childers's opinion, explaining that it was based on a "singular snapshot in time," unsupported by the record, and premised on Andrea's subjective complaints only. (Id. at 16-17.)

Andrea argues that Dr. Childers's opinion is entitled to controlling weight. (R. 15, Pl.'s Mem. at 5-6.) Generally, the opinion of a treating physician is entitled to controlling weight because of the length and nature of the treatment relationship,

so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case."[3]  *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  If the "longitudinal view" that a treating physician brings to the table is lacking, then the physician's opinion is not entitled to controlling weight and becomes another piece of evidence for the ALJ to weigh according to the checklist of factors in 20 C.F.R. § 404.1527(c).  *Cullinan v. Berryhill*, 878 F.3d 598, 605 (7th Cir. 2017); *see also Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

Andrea argues that Dr. Childers qualifies as a treating physician because she continued to treat Andrea after she gave her opinion.  (R. 15, Pl.'s Mem. at 6.)  The court disagrees.  Where, as here, the physician lacked the requisite longitudinal view, "the very reasons the Social Security regulations set out for giving substantial weight to a treating physician's opinion are absent."  *See Scheck v. Barnhart*, 357 F.3d 697, 702-03 (7th Cir. 2004).  Indeed, it would be "exceedingly illogical" to apply the treating physician rule to a doctor who at the time she gave her opinion had only observed the claimant once, *id.* at 702, as the ALJ noted here.

Andrea also takes issue with the reasons the ALJ cited for discounting Dr. Childers's opinion.  (R. 15, Pl.'s Mem. at 6-8.)  She first contends that the ALJ improperly discounted the psychiatrist's opinion because it was based on Andrea's

---

[3]  The Social Security Administration adopted new rules for agency review of disability claims involving the treating physician rule.  *See* 82 Fed. Reg. 58844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017).  Because the new rules apply only to disability applications filed on or after March 27, 2017, they are not applicable in this case.  (Id.)

subjective complaints. (Id. at 6-7.) Ordinarily, an ALJ may discount a physician's opinion if it is based on a claimant's subjective complaints. *Ghiselli v. Colvin*, 837 F.3d 771, 776 (7th Cir. 2016). Andrea correctly notes, however, that in the case of a mental health provider, a patient's self-reports often form the basis for psychiatric assessments. (R. 15, Pl.'s Mem. at 6-7 (citing *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015), and *Adaire v. Colvin*, 778 F.3d 685, 688 (7th Cir. 2015)).) Even so, mental health providers can be too accepting of their patients' complaints. *See, e.g.*, *Winsted v. Berryhill*, 923 F.3d 471, 478 (7th Cir. 2019) (ALJ properly rejected psychologist's opinion that was "based on only one evaluation and largely reflected [the claimant's] subjective reporting"). That is what happened here, according to the ALJ, as reflected by Dr. Childers's opinion, which was unsupported by clinical findings or observations.

Andrea insists that the ALJ was required to discuss Dr. Childers's treatment notes because an ALJ may not ignore a contrary line of evidence. (R. 15, Pl.'s Mem. at 7.) Andrea compares this case to *Todd v. Astrue*, No. 10 CV 4673, 2012 WL 3096681, at *7-8 (N.D. Ill. July 30, 2012), in which an ALJ improperly rejected a doctor's opinion without any mention of treatment notes that provided the only basis for his opinion. Because of the ALJ's error, the court in *Todd* could not be assured that "the ALJ even saw [the doctor's] treatment notes." *Id.* at *8. Unlike *Todd*, here the ALJ clearly was aware of Dr. Childers's treatment notes, given that she discussed them in her symptom assessment. (A.R. 16 (citing id. at 462, 470, 478, 486).) To be sure, the ALJ explained that despite initially observing Andrea as

12

being anxious and in distress, Dr. Childers later noted overall improvement with medications despite some ongoing symptoms. (Id.) Therefore, the ALJ did not fail to discuss Dr. Childers's treatment notes.

Andrea also contends that the ALJ inappropriately fixated on the word "housebound" in Dr. Childers's opinion. (R. 15, Pl.'s Mem. at 7-8.) The ALJ found that Andrea's in-person attendance at medical appointments was inconsistent with Dr. Childers's opinion that Andrea is "housebound." (A.R. 17.) Andrea points out Dr. Childers clarified that Andrea is unable to leave her house alone, has not done so in over eight months, and relies on family members to go places with her. (R. 15, Pl.'s Mem. at 7 (citing A.R. 443-45).) But the ALJ explained that she found these parts of Dr. Childers's opinion unreliable given that the psychiatrist only met with Andrea once before issuing her opinion. (A.R. 16-17.) Andrea also points to treatment notes showing that she had some difficulty attending medical appointments, which she claims the ALJ ignored. (R. 15, Pl.'s Mem. at 8 (citing A.R. 470 (Dr. Childers's note that Andrea reported having a panic attack at the dentist), 556 (social worker's note that Andrea reported feeling anxious and panicky)).) But as explained above, the ALJ did not ignore this evidence.

Andrea next takes issue with the ALJ's statement that "[t]he record fails to support a 'severe' physical impairment, let alone debilitating pain." (R. 15, Pl.'s Mem. at 8.) This statement is puzzling because Dr. Childers did not offer an opinion as to Andrea's alleged physical impairments. She did opine that Andrea is debilitated because of *panic*. (A.R. 444 (emphasis added).) Therefore, it is likely

that the ALJ mistyped "pain" instead of "panic." *See Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) (the court applies a "commonsensical reading" to the entirely of an ALJ's decision). This leaves the ALJ's reference to "'severe' physical impairments," which the government does not address, and Andrea summarily asserts is a reversible error. While clearly an error, it is not a reversible error because the ALJ gave other, sound reasons for discounting Dr. Childers's opinion.

Finally, Andrea challenges the ALJ's failure to address the checklist of factors and to explain why she assigned "great weight" to the opinions of the state agency reviewing psychologists. (R. 15, Pl.'s Mem. at 9.) The ALJ did not explicitly apply the checklist, which can provide a basis for remand. *See, e.g.*, *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010) (remanding where the ALJ did not "explicitly address the checklist of factors"); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (same where the ALJ's decision "said nothing" about the checklist); *cf. Schreiber v. Colvin*, 519 Fed. Appx. 951, 959 (7th Cir. 2013) (affirming denial of benefits where ALJ's decision "makes clear that he was aware of and considered many of the [checklist of] factors," despite not explicitly analyzing them); *Elder v. Astrue*, 529 F.3d 408, 415-16 (7th Cir. 2008) (same where ALJ's decision hinged on only two of factors). The ALJ also did not explain why she gave great weight to the opinions of the reviewing psychologists other than stating that Andrea's "clinical record, and the lack of more significant symptomology documented therein, as well as her lack of inpatient psychiatric hospitalization fails to support greater limitations." (A.R. 16.) But this court must allow the ALJ's "decision to stand so

long as the ALJ 'minimally articulated' [her] reasons—a very deferential standard that we have, in fact, deemed 'lax.'" *Elder*, 529 F.3d at 415. The ALJ met that deferential standard here.

As discussed above, in evaluating Dr. Childers's opinion the ALJ touched on many of the checklist's factors, such as the nature and extent of her treatment relationship with Andrea—which the ALJ emphasized was the product of a single encounter—and the supportability and consistency of her opinion. (A.R. 16-17); *see* 20 C.F.R. § 404.1527(c). The fact that Dr. Childers specializes in psychiatry as opposed to psychology does not, as Andrea suggests, tip the scale in Dr. Childers's favor in light of the other factors that weigh against her opinion. (R. 15, Pl.'s Mem. at 9 (citing *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (suggesting the checklist's specialization factor favors the opinion of a psychiatrist over that of a psychologist)).) What matters is that the ALJ found that the record as a whole lacks evidence to support the extreme limitations that Dr. Childers assessed. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). Because the ALJ "minimally articulated" her reasons and those reasons are supported by substantial evidence, this court may not disturb the ALJ's evaluation of the opinion evidence.

15

## C.    Step Three Analysis

Andrea asserts that the ALJ erred in not finding her disabled at step three.[4] Specifically, she argues that she satisfies the paragraph B criteria of Listings 12.04 for affective disorders and 12.06 for anxiety-related disorders.  (R. 15, Pl.'s Mem. at 13.)  To satisfy the paragraph B criteria for these listings, the claimant must establish "marked" limitations in two, or "extreme" limitations in one, of the broad areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  20 C.F.R. Pt. 404, Subpt. P, App. 1; 20 C.F.R. § 404.1520a(c)(3).  Here the ALJ determined that the paragraph B criteria were not satisfied because Andrea was moderately limited in each area except adapting or managing oneself, in which she was mildly limited.  (A.R. 13-14.)  Aside from Dr. Childers's opinion, which the ALJ properly discounted as explained above, the reviewing psychologists provided the only other assessments of the paragraph B criteria.  They found that the criteria were not satisfied.  (Id. at 96, 110.)

Andrea makes two arguments as to why the ALJ's step-three finding requires reversal.  First, she argues that the ALJ lacked sufficient opinion evidence from experts to decide whether she satisfied the paragraph B criteria.  (R. 15, Pl.'s Mem. at 9-10.)  The crux of her argument here is that the reviewing psychologists, whose

---

[4] Andrea makes this argument as part of her challenge to the ALJ's RFC finding, even though the determination of whether a claimant suffers from a severe condition that meets a listed impairment comes at step three of the sequential evaluation process.  *See* 20 C.F.R. § 404.1520(a)(4)(iii).  The court addresses this argument, which is otherwise developed and fairly presented for review, in the appropriate section pertaining to step three.

opinions the ALJ gave great weight, rendered their assessments before the Social Security Administration changed the paragraph B criteria. The revised criteria apply retroactively to claims that were pending on the effective date of January 17, 2017, and the initial and reconsideration denials came before that date, in October 2015 and February 2016, respectively. (A.R. 19, 99, 113); 81 Fed. Reg. 66138-01, 2016 WL 5341732 (Sep. 26, 2016). As a result, Andrea argues that the ALJ was obligated to get an updated medical opinion or to summon a psychological expert to attend the hearing to offer an opinion based on the revised paragraph B criteria.

Andrea's argument is unconvincing for several reasons. First, although the ALJ gave the reviewing psychologists' opinions great weight in fashioning the RFC, she did not cite them as evidence to support her paragraph B analysis. Regardless, the ALJ's apparent non-reliance on a medical opinion is not an error because the determination of whether a listing is met or equaled is an "ultimate legal question" for the ALJ. SSR 96-6p, 1996 WL 362203 (July 2, 1996); *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004). Additionally, Andrea incorrectly relies on SSR 96-6p for the proposition that the ALJ was required to obtain an updated medical opinion because the paragraph B criteria were revised. That regulation states that an ALJ "must obtain an updated medical opinion from a medical expert" in two circumstances: (1) if, in the opinion of the ALJ, the evidence suggests that the claimant's condition may medically equal one of the listed impairments; or (2) if additional evidence is received that, in the opinion of the ALJ, may change the state agency physician's opinion that the impairments are not equal to a listed

17

impairment. SSR 96-6p, 1996 WL 362203, at *34468. Andrea does not argue that either circumstance occurred here. Finally, changes to regulations generally apply retroactively if the regulations clarify the current law rather than substantively change it, *see Pope v. Shalala*, 998 F.2d 483 (7th Cir. 1993), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999), and Andrea does not argue that the revisions to the paragraph B criteria substantively change the law.

Andrea asserts for the first time in her reply brief that the ALJ should have solicited an updated medical opinion following the submission of records from Dr. Childers, which post-dated the reviewing psychologists' opinions. (R. 22, Pl.'s Reply at 6.) Even setting aside the well-settled principle that arguments only developed in a reply brief are waived, *see Mendez v. Perla Dental*, 646 F.3d 420, 423-24 (7th Cir. 2011), Andrea's argument is not availing. As discussed, Dr. Childers's more recent treatment notes report Andrea's overall improvement with medications. In light of the records documenting Andrea's improved psychiatric symptomology, it is not reasonable to conclude that the reviewing psychologists would have changed their findings that the paragraph B criteria were not satisfied. In fact, these records actually lend support to their findings. The ALJ therefore did not err by not seeking an updated medical opinion.

Andrea next argues that the ALJ erred in finding that she only has mild to moderate (as opposed to marked or extreme) limitations in each of the paragraph B criteria. (R. 15, Pl.'s Mem. at 10-13.) The government does not directly respond to Andrea's argument and instead generally argues that "[t]he ALJ devoted a full

paragraph to each [paragraph] B criteria, and the rational there is buttressed by the rest of the ALJ's decision." (R. 21, Govt.'s Mem. at 11.) The court agrees with the government that the ALJ discussed in paragraph form each criterion, but her analysis was not robust. Still the court's review of the ALJ's decision reveals that the ALJ considered the record as a whole, and that substantial evidence supports her determination that the paragraph B criteria were not met.

Starting with adapting or manage oneself, Andrea acknowledges that the ALJ found she is mildly limited in this area because she presented at medical appointments appropriately dressed and groomed with good hygiene and self-reported caring for her mother. (A.R. 14.) Andrea does not argue that the ALJ's reasoning here is unsupported. She instead points to a handful of records and asserts that the ALJ should have determined that she has extreme limitations, meaning she is entirely unable to function "independently, appropriately, effective[ly], and on a sustained basis." (R. 15, Pl.'s Mem. at 12-13); 81 Fed. Reg. 66138-01, 2016 WL 5341732, at *66164. However, the records cited reflect Andrea's own reports that she cannot independently manage personal care tasks and that she relies on her family members to prepare meals and take her to medical appointments, church, or run errands. (See, e.g., A.R. 257-58, 262 (Andrea's 2016 function report), 66-67 (Andrea's testimony); 347, 550, 557 (Andrea's reports to mental health providers).) As discussed, the ALJ's decision to discount Andrea's symptom statements is supported by substantial evidence.

Andrea also disagrees with the ALJ's finding that she is moderately limited in understanding, remembering, or applying information and concentration, persistence, or pace because she can use a computer and handle money. (A.R. 13-14.) Specifically, Andrea stated in her 2016 function report that she uses a computer to shop for food and that she is able to pay bills, count change, handle a savings account, and use a checkbook and money orders. (Id. at 259.) Andrea argues that the ALJ ignored "qualifying statements" that she needs assistance using a computer and "cannot be rushed" when handling money. (R. 15, Pl.'s Mem. at 10-11.) These statements are based on Andrea's subjective reports. In any event, they are from an outdated function report, (see A.R. 236 (Andrea's 2015 function report)), and the ALJ was not required to explain her decision to disregard it in light of the more recent function report.

Andrea further asserts that she is lacking in her "abilities to learn, recall, and use information to perform work activities," as evidenced by Dr. Hambaugh's note that she answered questions slowly, could not recall recent news, and "only" identified two out of three objects after five minutes. (R. 15, Pl.'s Mem. at 11-12.) The ALJ found, however, that this evidence pointed the other way, noting that the examination indicated that Andrea has normal mental functioning. (A.R. 15-16.) This court is not permitted to reweigh evidence, see Pepper, 712 F.3d at 362, and the ALJ supported her assessment with substantial evidence.

Similarly, Andrea points to her function reports and self-reports to argue that she is lacking in her "abilities to focus attention on work activities and stay on task

at a sustain[ed] rate" because of anxiety and panic attacks. This argument is likewise unavailing. Andrea asserts that during an anxiety attack she "can't walk," has to sit down, and "can't move until someone comes to get" her. (A.R. 485 (Dr. Childers's November 16, 2015 note); see also id. at 556 (July 2017 visit with social worker).) As discussed, the ALJ contrasted these self-reported symptoms with the medical treatment documentation and found them unsupported by objective clinical findings. In other words, the ALJ built the requisite logical bridge between the evidence and her conclusions. Therefore, Andrea has not shown that this aspect of the ALJ's decision lacks the support of substantial evidence.

Finally, Andrea challenges the ALJ's assessment that she is "no more than" moderately limited in her ability to interact with others. (A.R. 14.) Andrea points to treatment notes reflecting her anxious appearance and discomfort during appointments, (see id. at 485 (November 2015 visit with Dr. Childers), 554 (June 2017 visit with social worker)), and her testimony that she once had a panic attack at a religious meeting and participates in door-to-door ministry with some difficulty, (id. at 67-69)—more "qualifying facts" that, according to Andrea, the ALJ ignored. Contrary to Andrea's assertions, the ALJ addressed Andrea's reports concerning her religious activities, and noted that Andrea by her own account was an active participant in those activities in 2016. (Id. at 16.) The ALJ also acknowledged Andrea's reports of difficulties interacting with others but determined that on the whole her medical records did not support an inability to interact with others. (Id. at 14.) In any event, the ALJ is not required to discuss every piece of evidence in

the record. *See Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995). Here the ALJ weighed and considered relevant evidence including treatment records and Andrea's self-reported issues. Accordingly, the court finds that the ALJ did not err in her evaluation of the paragraph B criteria.

## D. The RFC Assessment

Andrea's motion gains some traction when she turns to the ALJ's RFC assessment and argues that the ALJ failed to adequately explain why she did not restrict Andrea in a manner consistent with the opinions of the reviewing psychologists. (R. 15, Pl.'s Mem. at 14.) They both opined that Andrea would have problems performing "detailed activities of a somewhat complicated nature" because of her anxiety and depression, but that she had "sufficient cognitive and attentional abilities to perform simple routine activities which have few social demands." (A.R. 99, 113.) The ALJ limited Andrea to "simple work-related decisions" and "occasional changes in work processes and environment" in the hypothetical question posed to the VE and the resulting RFC but she did not include a restriction to "few social demands." (Id. at 14.) She instead limited Andrea to "incidental and superficial contact with co-workers, supervisors, and the public." (Id.)

Andrea contends that "few" refers to the frequency she could interact with others, whereas "incidental and superficial" refers to quality of her interactions. (R. 15, Pl.'s Mem. at 14.) She thus argues that the ALJ's RFC assessment is inconsistent with the reviewing psychologists' assessments. (Id.) For support she cites two decisions from this circuit finding that the difference between quantity

22

and quality social limitations is significant and constitutes grounds for remand. (Id. (citing *Wartak v. Colvin*, No. 2:14 CV 401, 2016 WL 880945, at *7 (N.D. Ind. March 8, 2016), and *Cote v. Colvin*, No. 16 CV 57, 2017 WL 448617, at *7 (W.D. Wis. Feb. 2, 2017)).) The government insists that there is no "logical discrepancy" between the two social limitations but neglects to address the distinction between qualitative and quantitative social limitations. (R. 21, Govt.'s Mem. at 11-12.)

This case presents a factual scenario similar to *Wartak*. There the court held that an ALJ's RFC limiting the claimant to "occasional" contact was inconsistent with the reviewing physician's RFC limiting the claimant to "superficial" contact. *Wartak,* 2016 WL 880945, at *7. The court explained that "'[o]ccasional contact' goes to the quantity of time spent with the individuals, whereas 'superficial contact' goes to the quality of the interactions." *Id*. Because the ALJ failed to explain his reasons for limiting the quantity—but not the quality—of the claimant's social interaction given the reviewing physician's opinion, the court found that the ALJ erred in assessing the RFC. *Id*. The court noted that the ALJ's error was aggravated by the exclusion of any quality social interaction limitation from the hypothetical questions posed to the VE. *Id*.

Here the ALJ limited Andrea to "incidental and superficial" contact, describing the quality of interactions, whereas the reviewing psychologists limited her to "few social demands," describing the quantity of time spent. And, as was the case in *Wartak*, the ALJ offered no explanation for her departure from the reviewing psychologists' RFC. Curiously, the ALJ purported to "exercise an

23

abundance of caution" in limiting Andrea to incidental and superficial contact solely because she afforded "great deference" to the reviewing psychologists who assigned a social limitation. (A.R. 16.) Yet she assigned a limitation entirely distinct from theirs. The ALJ's error is further compounded because she did not ask the VE what impact a limitation related to the quantity of time spent with others would have on available jobs. *See Wartak*, 2016 WL 880945, at *7. Absent any argument from the government, and because the ALJ's decision lacks the requisite logical bridge from the evidence to the RFC, the case must be remanded so that the ALJ can explain her reasoning.

Andrea also contends that the ALJ failed to incorporate in the hypothetical and the RFC all of her limitations in concentration, persistence, or pace and interacting with others. (R. 15, Pl.'s Mem. at 14-15.) Specifically, Andrea refers in a footnote to a list of five activities in which Andrea's capacity to perform was "moderately limited," according to the reviewing psychologists. (Id. at 15 n.42.) Andrea neglects to acknowledge that these moderate limitations are contained in Section I of the RFC assessment form, (see A.R. 98-99, 112-13), and the non-binding, but instructive Program and Operations Manual System (POMS) explains that "Section I is merely a worksheet . . . and "does *not* constitute the RFC assessment." *See* POMS DI 24510.06(B)(2)(a) (emphasis added and bold omitted), *available at* https://secure.ssa.gov/apps10/poms.nsf/partlist; *see also Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Kefeler*, 537 U.S. 371, 385

(2003) (characterizing POMS as administrative interpretations that warrant respect even though not the product of formal rulemaking).

Nevertheless, the Seventh Circuit has made clear that both the hypothetical and the RFC have to account for even moderate limitations attributed to the claimant in Section I of the RFC assessment. *See Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015); *Yurt v. Colvin*, 758 F.3d at 857. The ALJ may rely upon a medical expert's narrative RFC where it adequately accounts for the limitations the expert identified as moderate in Section I. *See Varga*, 794 F.3d at 816 (citing *Johansen v. Barnhart*, 314 F.3d 283, 286 (7th Cir. 2002)). Here Andrea does not dispute that the ALJ relied upon the opinions of the reviewing psychologists in crafting the hypothetical and the RFC, (see R. 15, Pl.'s Mem. at 14); however, she does not develop any substantive argument explaining why their RFCs fail to capture the limitations they identified as moderate in Section I. Nor does she identify any additional limitations that the ALJ should have added for those moderate limitations. Perfunctory and undeveloped arguments result in waiver. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016). Given that this case is being remanded on other grounds, the ALJ should take great care in accounting for all of Andrea's moderate limitations in the RFC.

Lastly, Andrea contends that the ALJ erred in deciding at step two that her alleged left knee disorder was not a medically determinable impairment. (R. 15, Pl.'s Mem. at 15-16.) She criticizes the ALJ for basing her finding on the fact that the record did not reflect "imaging to support a knee abnormality." (Id. at 15.)

Andrea points out that at least two doctors, including an orthopedic physician, diagnosed osteoarthritis, and that their diagnoses are consistent with treatment notes indicating that Andrea experienced signs of osteoarthritis. (Id. at 15 (citing A.R. 364, 526).) But while Andrea cites an August 2016 examination by an orthopedic physician noting that she had left knee crepitation, tenderness, and decreased range of motion, she ignores the physician's note that Andrea denied having any joint pain, stiffness, swelling, or difficulty walking. (A.R. 525.) She also ignores the multitude of records in which her physical examinations were normal. Therefore, the medical signs actually appear to support rather than undermine the ALJ's finding that Andrea's left knee disorder was not medically determinable.

Further, Andrea's claim that the ALJ "reject[ed]" the doctors' osteoarthritis diagnoses is incorrect, (R. 15, Pl.'s Mem. at 16), as the ALJ explicitly acknowledged their diagnoses prior to concluding that there was no imaging, such as an x-ray or MRI, to substantiate a medically determinable impairment, (A.R. 13). In so finding, the ALJ did not rely on the opinion of a reviewing physician. Rather, the ALJ cited to a reviewing physician's opinion in her RFC analysis to support her decision that physical impairments found medically determinable at step two—which as the ALJ reiterated did not include a knee impairment—are not severe. (Id. at 16 (affording great weight to Dr. Reynaldo Gotanco's February 2016 opinion at the reconsideration level that Andrea is without a severe physical impairment).) Because the ALJ reasonably found that Andrea failed to establish the existence of a medically determinable left knee impairment, the court need not address Andrea's

secondary argument that the ALJ could have found Andrea disabled under the medical-vocational guidelines. (R. 15, Pl.'s Mem. at 16.) In any event, this argument is speculative as it relies upon the unsupported assumption that the ALJ would have limited Andrea to light or sedentary work had she determined that the alleged left knee impairment was medically determinable.

## Conclusion

For the foregoing reasons, Andrea's motion for summary judgment is granted and the government's is denied.

ENTER:

**Young B. Kim**
**United States Magistrate Judge**

27